IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANGIELA HARRIS, § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:20-CV-651-L-BK |
| § | |
| TUCKER ENTERTAINMENT, LLC., § | |
| D/B/A/ DALLAS CABARET-SOUTH, AND § | |
| DOUGLAS ERNEST, § | |
|     DEFENDANTS. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the referral of the district judge, Doc. 10, and 28 U.S.C. § 636(b), Defendants' *Motion to Dismiss and/or Stay All Proceedings and Compel Arbitration*, Doc. 8, is now before the Court. For the reasons that follow, the motion to compel arbitration should be **GRANTED**, and this civil action should be **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

    **A.  Procedural Posture**

In March 2020, Plaintiff, a former dancer at Defendants' cabaret, filed her complaint seeking damages for Defendants' putative violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). Doc. 1. Specifically, Plaintiff alleges that Defendants misclassified her as an independent contractor instead of an employee, thereby "evading" the FLSA's "mandatory minimum wage and overtime provisions" and "illegally absconding with Plaintiff's tips." Doc. 1 at 1, 2. Plaintiff brought suit to collect individually "and on behalf of all other similarly situated employees, current and former." Doc. 1 at 2. Defendants have now moved to

dismiss and/or stay and compel arbitration of the dispute. Doc. 8. Plaintiff has filed her response, Doc. 9, and Defendants their reply, Doc. 11. The motion is now ripe for consideration.

### B. Relevant Facts

Prospective dancers at Dallas Cabaret-South have the option to sign on as employees or independent contractors. Doc. 8-1 at 3 (Declaration of Douglas Ernest). If a dancer chooses the latter arrangement, they are required to sign a licensing and leasing agreement. *Id.* On February 25, 2016, Plaintiff and Defendants entered into a licensing and leasing agreement (the "Licensing Agreement") for Plaintiff's use of Defendants' premises as an independent contractor. Doc. 8-1 at 6. Contained within the Licensing Agreement is a binding arbitration provision (the "Arbitration Provision"). Doc. 8-1 at 14, 15, ¶ 22. The Arbitration Provision reads in part:

> The parties agree that this **Agreement** is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement as well as any disputes that may have arisen at any time during the relationship between the parties, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch . . .
>
> . . .
>
> **THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES, DISPUTES, OR CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.**

*Id.* (emphasis in original). The Arbitration Provision itself contains a delegation clause (the "Delegation Clause") providing that: "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VAILDITY** [sic] **OF ANY PART OF**" the Licensing Agreement. Doc. 8-1 at 15 (emphasis in original).

Plaintiff does not dispute the existence, or her signing, of the Licensing Agreement. Instead, she "challenges the validity and, therefore, enforceability of the [Arbitration Provision]," arguing that it is "unconscionable because it forced Plaintiff to forgo her rights afforded by the

2

FLSA." Doc. 9 at 3. Most relevantly, Plaintiff also specifically attacks the Delegation Clause as unconscionable. Doc. 9 at 7-8.

## II.     APPLICABLE LAW

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Thus, agreements to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party to a contract containing an arbitration provision refuses to arbitrate, the aggrieved party may petition the district court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Ordinarily, when considering whether a dispute is subject to binding arbitration, courts in the Fifth Circuit conduct a two-step inquiry. The first step regards contract formation — "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). The second step requires the court to interpret the scope of the agreement — "whether *this* claim is covered by the arbitration agreement." *Id.* (emphasis in original). But, when an "arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.* (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S.

3

938, 942 (1995)). The issue then becomes "who should have the primary power to decide whether the claim is arbitrable." *Id.* (internal quotation marks omitted).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202. A valid delegation clause thus requires the court to send a claim to arbitration to allow the arbitrator to rule on gateway arbitrability issues. *Id.* (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Therefore, absent a direct challenge to the delegation clause by the plaintiff, when a party seeking to compel arbitration "points to a purported delegation clause, the court's analysis is limited." *Id.*

The court first analyzes whether a valid contract has been formed. *Id.* If the court finds that a valid agreement exists, the only question left is "whether the purported delegation clause is in fact a delegation clause — that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* But when a plaintiff directly attacks the delegation clause's validity, as opposed to the validity of the arbitration provision or the contract as a whole, the court, not an arbitrator, "must first consider the challenge before ordering compliance with that agreement under [FAA] § 4." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71.

### III.   ANALYSIS

Plaintiff directly attacks the validity of the Delegation Clause but does not dispute that she entered into the Licensing Agreement that contained the Arbitration Provision. Therefore, the first question before the Court is whether the Delegation Clause "evinces an intent to have the arbitrator decide" arbitrability. *Kubala*, 830 F.3d at 202. Because the Court finds that the Delegation Clause does evince such an intent, the Court next considers Plaintiff's challenge to the Delegation Clause.

### A.  The Parties' Intent to Delegate Questions of Arbitrability to the Arbitrator

Unless there is "clear and unmistakable" evidence, "courts may not assume that parties have agreed to arbitrate" arbitrability.  *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (citing *First Options of Chi., Inc.*, 514 U.S. at 944)).  A party can demonstrate clear and unmistakable evidence by "expressly incorporating rules empowering the arbitrator to decide substantive arbitrability" into a contract.  *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019).

Rule 7(a) of the American Arbitration Association's ("AAA") Commercial Arbitration Rules offers one such example.  It provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *Id.*  A second way that parties can demonstrate clear and unmistakable evidence is by crafting broad arbitration provisions.  *Id.* at 538.

In this case, the parties' Licensing Agreement does both.  First, the Arbitration Provision provides that "any disputes under [the Licensing Agreement] . . . will be governed . . . by the [AAA]."  Doc. 8-1 at 14, ¶ 22.  Second, the Arbitration Provision includes a broad, express Delegation Clause noting that "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY AND ALL DISPUTES OVER THE VAILDITY** [sic] **OF ANY PART OF**" the Licensing Agreement.  Doc. 8-1 at 15.  Thus, Defendants have shown clearly and unmistakably that the parties agreed to delegate issues of arbitrability to the arbitrator.

### B. Plaintiff's Challenge to the Delegation Clause

Had Plaintiff failed to challenge the Delegation Clause, the Court's inquiry would be complete, and arbitration would be ordered. *Rent-A-Ctr., W., Inc*, 561 U.S. at 71-72. Because Plaintiff has attacked the Delegation Clause itself as unconscionable, however, the Court next considers that challenge. *Id.*

Fundamentally, arbitration is a matter of contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Ctr., W. Inc.*, 561 U.S. at 67). Courts thus apply ordinary state law contract principles when evaluating the validity of arbitration agreements. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Arbitration agreements and delegation clauses, like other contracts, are subject to contract defenses such as fraud, duress, or unconscionability. *Rent-A-Ctr., W., Inc*, 561 U.S. at 68. Here, Texas contract law applies, and unconscionable agreements are unenforceable in Texas. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

While "not subject to precise doctrinal definition," unconscionability is "determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided." *Id.* at 348-49. Unconscionability exists in two flavors: "(1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). Plaintiff's unconscionability argument falls into the latter category.

Plaintiff argues that the Delegation Clause is unconscionable because it removes the arbitrator's authority "to make any finding or award that is in conflict with the provisions of the

6

Licensing Agreement." Doc. 9 at 8; *see also* Doc. 8-1 at 14, ¶ 22. Plaintiff asserts that because the Licensing Agreement defines the parties as Licensee and Licensor, "the arbitrator cannot make a determination pursuant to the FLSA" that she is anything but an independent contractor, and, therefore, her rights and the outcome of the case have been "pre-determined." Doc. 9 at 8.

Indeed, the Delegation Clause provides that "[t]he arbitrator will have no authority to make any ruling, finding or award that does not conform to the terms and conditions of this [Licensing] Agreement." Doc. 8-1 at 14, ¶ 22. But, as Defendants correctly highlight, Plaintiff fails to consider the Licensing Agreement's language specifically contemplating circumstances where, as here, "any court, tribunal, or governmental agency determines, or if [Plaintiff] at any time contends, claims, or asserts, that the relationship between the parties is something other than that of Licensor/Lessor and Licensee/Lessee." Doc. 8-1 at 11, ¶ 13(D). Nor does Plaintiff consider the language indicating that arbitration in any potential dispute would "be governed and settled by an impartial independent arbitrator" appointed by the AAA. Doc. 8-1 at 14. Plaintiff cannot successfully argue that her status as an independent contractor has been pre-determined by dint of an arbitrator's duty to decide a case that conforms with the Licensing Agreement, when that very agreement contemplates a situation where an independent arbitrator might deem Plaintiff something other than an independent contractor. *See Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 4119994, at *4 (N.D. Tex. Aug. 17, 2012), adopted by 2012 WL 4169164 (N.D. Tex. Sept. 17, 2012) (concluding that a nearly identical contract provision was neither illusory nor unconscionable). In sum, the Delegation Clause is neither unfair nor grossly one-sided, and is not unenforceable as unconscionable. *In re Poly-Am., L.P.*, 262 S.W.3d at 348.

Because Plaintiff's challenge to the Delegation Clause fails, the Court cannot reach Plaintiff's remaining arguments as to the purported unconscionability of other portions of the

Arbitration Provision or her underlying FLSA claim. *See* Doc. 9 at 3-7 (challenging the Arbitration Provision's requirements that Plaintiff forgo her substantive FLSA rights and that the arbitrator must resolve the parties' dispute in accordance with the provisions of the Licensing Agreement rather than the FLSA and AAA rules). All remaining disputes must be heard in the arbitral forum.

### C. Dismissal of Case

The FAA provides that courts should stay an action upon determining that an issue is referable to arbitration. 9 U.S.C. § 3. However, a court may dismiss a case "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). As discussed, all of Plaintiff's claims must be submitted to arbitration. Therefore, this case should be dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendants' *Motion to Compel Arbitration*, Doc. 8, should be **GRANTED**. The parties should be **ORDERED** to arbitrate this action, and this case should be **DISMISSED WITH PREJUDICE**.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).